The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission.
2. On July 19, 1999, an employee-employer relationship existed between plaintiff and defendant-employer and on that date Key Benefit Services was the workers compensation carrier on the risk and responsible for any liability asserted against defendant-employer. Furthermore, the parties are subject to and bound by the North Carolina Workers Compensation Act.
3. On July 19, 1999, plaintiff suffered a specific traumatic injury by accident to his back while lifting heavy rocks, arising out of and in the course and scope of plaintiffs employment with defendant-employer.
4. Plaintiffs average weekly wage was $313.00 with a corresponding weekly compensation rate of $208.67.
5. The issue before the Commission is whether there is a causal connection between plaintiffs herniated disk and the original injury by accident of July 19, 1999, and if so what are the compensable consequences.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 39 years old and worked for defendant-employer as an electrician, carpenter and laborer. Plaintiff had been employed with defendant-employer since August 11, 1998.
2. On July 19, 1999, plaintiff was working and bent over to pick up a rock to remove it from a ditch. While attempting to lift the rock plaintiff injured his back. Plaintiff reported the back injury to his coworker Steve Fox and to his supervisor. Plaintiff informed both of them that he could no longer work that day due to his injury.
3. On the following day, July 20, 1999, plaintiff sought treatment at the Watauga Medical Center in Boone, North Carolina and was diagnosed with back pain and placed on restrictions of no bending or lifting.
4. Next, after his wedding ceremony to his wife, plaintiff was seen on July 28, 1999 at Alleghany Memorial Hospital in Sparta, North Carolina where he complained of right-sided back pain. Plaintiff was administered pain medication and a muscle relaxant.
5. The next day, July 29, 1999, plaintiff sought treatment at Watauga Medical Center where he was given narcotic pain medication and Prednisone. Plaintiff was instructed to follow up with Boone Orthopaedic Group.
6. Thereafter, on July 31, 1999, plaintiff again sought treatment at Watauga Medical Center where he complained of low back pain and right leg numbness. X-rays were taken of plaintiffs lumbar spine and he was instructed to continue with medications.
7. As instructed, on August 3, 1999, plaintiff followed up with Boone Orthopaedic Associates where he was seen by Dr. John C. Newell who excused plaintiff from work at least until September 3, 1999. In addition, Dr. Newell prescribed Vicodin and ordered a series of epidural injections to assist plaintiff with pain management.
8. Thereafter, plaintiff telephoned Dr. Newell complaining of severe pain. Consequently, Dr. Newell ordered an MRI of plaintiffs lumbar spine and prescribed more pain medication.
9. On August 23, 1999, plaintiff returned to Dr. Newell who reviewed plaintiffs MRI, which revealed a large herniated disc, extruded from the L5-S1 disc space behind the right side of level S1 that filled approximately 2/3 of the spinal canal with significant displacement of the dural sac. Plaintiff complained of urinary incontinence followed by a sense of urgency with an inability to urinate that morning. Dr. Newells diagnosis was L5-S1 herniation with radicular symptoms and a new onset of symptoms suggesting equina syndrome. Due to plaintiffs recent bladder symptoms, Dr. Newell felt immediate surgery was indicated and telephoned a spine surgeon at Forsyth Hospital who agreed to transfer plaintiff for surgery.
11. Plaintiff underwent a diskectomy at L5-S1 performed by Harlan B. Daubert, M.D.
12. Thereafter, on September 7, 1999, plaintiff was examined by Dr. Daubert who noted a serous fluid collection, which he lanced expressing about 5-6 c.c.s of serous fluid. Also, Dr. Daubert refilled plaintiffs prescription for Vicodin ES.
13. On September 11, 1999, plaintiff was examined again by Dr. Daubert who noted that plaintiffs lumbar wound had become progressively painful and infected. Accordingly, due to the serious Methacillin resistant staph aureous infection, plaintiff was admitted to the hospital where he underwent an operation on September 12, 1999 for irrigation, debridement and secondary wound closure. Thereafter, plaintiff was discharged on September 28, 1999 after being hospitalized for 21 days.
15. Thereafter, on October 3, 1999, plaintiff was involved in a minor motor vehicle accident in the Wal-Mart parking lot in Boone where he sustained minor injuries completely unrelated to his workers compensation injuries.
16. Plaintiff returned to Dr. Newell on October 12, 1999 to have the catheter or PICC line previously used to administer the I.V. antibiotics removed.
17. Dr. Daubert indicated that plaintiffs back condition was more than likely a direct result of the injury plaintiff sustained while lifting rocks out of a ditch. Furthermore, Dr. Daubert based his opinion on plaintiffs reported history which is consistent with a description of the typical symptoms that occur following a herniated disc suggesting that the specific traumatic incident while lifting the rocks was the causal factor rather than plaintiffs catching his wife after her diabetic seizure. In addition, Dr. Newell causally related plaintiffs back condition to the incident that occurred while plaintiff was lifting rocks. Accordingly, the greater weight of the medical evidence shows that plaintiffs back condition and resulting surgery are causally related to the incident that he suffered on July 19, 1999.while lifting rocks in the course and scope of his employment with defendant-employer. Moreover, defendants contention that plaintiff injured his back after the events of his wedding date of July 27, 1999 when plaintiffs wife had a diabetic seizure is not persuasive and there is insufficient evidence of record to show an independent, intervening cause of plaintiffs injury or the resulting surgery.
18. Dr. Daubert did not evaluate plaintiffs erectile dysfunction, which should be evaluated by a urologist.
19. As a result of plaintiffs back injury and the necessary medical treatment and surgery, Dr. Daubert rated plaintiff with a 20% permanent partial disability to his back as a result of the injury of July 19, 1999. However, Dr. Daubert has not released plaintiff to return to work and plaintiff is accordingly incapable of earning any wages in any employment at this time.
20. This claim was defended on reasonable grounds and there has been no unfounded litigiousness on the part of defendants.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On July 19, 1999, plaintiff suffered a specific traumatic injury by accident to his back resulting in a herniated disc and two surgeries, arising out of and in the course and scope of plaintiffs employment with defendant-employer. N.C.G.S. 97-2(6).
2. There is insufficient evidence of record to show by the greater weight that the events that transpired following plaintiffs wedding on July 27, 1999 or any other events subsequent to July 19, 1999 resulted in an independent, intervening cause of plaintiffs injury. Horne v.Universal Leaf Tobacco Processors, 119 N.C. App. 682 (1995); Heatherlyv. Montgommery Components, Inc., 71 N.C. App. 377, 379 (1984).
3. Plaintiff is entitled to ongoing total disability benefits from July 19, 1999 at the compensation rate of $208.67 per week until plaintiff returns to work at the same or greater wages or until further order of the Commission. N.C.G.S. 97-29.
4. Plaintiff is entitled to have defendants pay all reasonably necessary medical expenses incurred by plaintiff as a result of this compensable injury by accident which tend to effect a cure, provide relief or lessen the period of disability, subject to the limitations of N.C.G.S. 97-25.1. Furthermore, plaintiff is entitled to have, as part of this medical treatment, an evaluation by a urologist. N.C.G.S. 97-25.
5. In the discretion of the Full Commission, plaintiff is not entitled to an assessment of costs or attorneys fees for defendants appeal to the Full Commission or defense of this claim. N.C.G.S. 97-88; N.C.G.S. 97-88.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay total disability benefits to plaintiff, subject to a reasonable attorneys fee, at the compensation rate of $208.67 per week from July 29, 1999 to the present and continuing until plaintiff returns to work at the same or greater wage or until further order of the Commission.
2. Defendants shall pay for all reasonably necessary medical treatment resulting from this injury by accident which tend to effect a cure, provide relief or lessen the period of disability, subject to the limitations of N.C.G.S. 97-25.1, including, but not limited to, an evaluation by a urologist. Defendants shall arrange this evaluation.
3. An attorneys fee in the amount of twenty-five percent (25%) of the accrued award is hereby approved to be paid directly to plaintiffs counsel. In addition, an attorneys fee in the amount of twenty-five percent (25%) of the ongoing disability benefits is hereby approved for plaintiffs attorney. Accordingly, every fourth check due plaintiff shall be sent directly to plaintiffs attorney.
4. Defendants shall pay an expert witness fee of $350.00 to Dr. Harlan Daubert and $350.00 to Dr. John Newell, if not already paid.
5. Defendants shall pay the costs due the Commission.
 ORDER
Plaintiffs motion for attorneys fees and cost pursuant to N.C.G.S. 97-88
and N.C.G.S. 97-88.1 is hereby, and the same shall be, Denied.
This the ___ day of May 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER